UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | |
|---|---|
| UNIVERSITY OF VIRGINIA ) | |
| PATENT FOUNDATION, ) | Civil Action No. 3:14cv51 |
|     Plaintiff, ) | |
| v. ) | MEMORANDUM OPINION AND ORDER |
| ) | |
| GENERAL ELECTRIC COMPANY ) | By:    Joel C. Hoppe |
| d/b/a GE HEALTHCARE, ) | United States Magistrate Judge |
|     Defendant. ) | |

On September 21, 2015, the Court held an in-chambers scheduling conference with the parties during which Defendant General Electric Company ("GE") requested that Plaintiff University of Virginia Patent Foundation ("UVAPF") limit the number of claims it was asserting. UVAPF objected, and the Court ordered briefing on the matter. GE filed a brief advocating claim limitation, ECF No. 110, and UVAPF filed a brief opposing it, ECF No. 111. At the conference and in their briefs, the parties also discussed the number of claim terms each side had identified for construction in their preliminary exchange. Having considered the parties' briefs and the relevant law, the Court finds it appropriate to limit the number of claims UVAPF may assert in this litigation and the number of disputed claim terms the parties may bring for construction.

I. Facts and Procedural History

This case concerns two patents related to magnetic resonance ("MR") imaging. In its first complaint, UVAPF alleged that GE, a manufacturer of MR technologies, infringed upon Patent No. RE44,644 (the '644 patent), titled "Method and apparatus for spin-echo-train MR imaging using prescribed signal evolutions." ECF No. 1. In the parties' Joint Request to Modify Proposed Pretrial Order, UVAPF related that the USPTO had allowed an application (the '190 application) for a new patent that was a continuation of the '644 patent and that it intended to amend its

1

complaint to include the resulting patent when it issued. ECF No. 33. Patent No. RE45,725 (the '725 patent) issued from the '190 application on October 6, 2015, and UVAPF moved to file an amended complaint incorporating the '725 patent. ECF No. 115. The Court granted UVAPF's motion, ECF No. 116, and UVAPF entered an amended complaint alleging that GE violated the '644 and '725 patents, ECF No. 117. Together, these patents-in-suit assert 294 claims.

The parties first addressed the number of asserted claims in their 26(f) plan. Rule 26(f) Joint Report 4–5, ECF No. 42. Months later, in June 2015, GE expressed to the Court its concern about the number of claims in the suit, and both parties submitted letter briefs regarding claim reduction. During a status conference on June 23, 2015, the Court observed that because UVAPF had yet to serve its infringement contentions, it was likely too early in the case to limit claims. GE did not pursue the matter further at that time.

On June 26, 2015, UVAPF served infringement contentions asserting 170 claims against GE. Detrixhe Decl. Ex. D at 1–2, ECF No. 110-5. GE responded on August 26 with invalidity contentions totaling more than 3,000 pages in arguments and exhibits. *Id.* ¶ 8. On September 15, GE served a list of 101 terms that it proposed for construction. *Id.* Ex. G at 17. Shortly thereafter, the Court held the in-chambers scheduling conference to discuss the instant dispute.[1]

GE argues that claim reduction is appropriate at this point in the litigation because (1) UVAPF has GE's core technical documents and possesses the knowledge to determine its best claims, GE Br. 10–12, (2) many of UVAPF's asserted claims are duplicative, *id.* at 2–3, 8–9, and (3) the number of currently disputed claims impairs GE's opportunity for meaningful inter partes review ("IPR"), *id.* at 12–15. GE highlights the large amount of work it has already performed

---

[1] Though the '725 patent issued and was added to the suit after the parties submitted their briefs, both sides' arguments incorporated the approved '190 application, which has the same language. There is no practical change to the parties' arguments from the addition of the '725 patent in the amended complaint.

2

litigating 170 claims through the start of claim construction and requests that the Court limit UVAPF to a maximum of 16 claims before the deadline for the next discovery step—the parties' exchange of preliminary claim constructions and extrinsic evidence. *Id.* at 3–4.

UVAPF argues that it is too early to require claim reduction because (1) it is still awaiting some discovery, UVAPF Br. 11, (2) its chosen expert has not been able to review the core technical documents GE delivered, *id.*, (3) it is generally premature to limit claims before the claim construction order, *id.* at 11–14, and (4) limiting claims based upon GE's deadline to file for IPR would grant GE an improper tactical advantage and violate UVAPF's due process rights, *id.* at 3–8. UVAPF also contends that GE has overstated the number of claim terms requiring construction through redundant counting—independently identifying for construction large passages, smaller phrases within them, and individual words within those phrases. *Id.* at 8–11.

## II. Discussion

*A.     Inter Partes Review*

The parties both make arguments based upon GE's anticipated IPR. GE contends that the Court should require claim reduction in time to facilitate an efficient IPR, while UVAPF argues that the Court should refrain until after the IPR deadline because narrowing the claims would give GE a tactical advantage in the review. For the reasons outlined below, I reject both arguments and decline to base the Court's schedule upon the external timeline of an IPR.

The Leahy-Smith America Invents Act instituted IPR to replace inter partes reexamination with an improved post-grant procedure. 35 U.S.C. §§ 311–19. Following the Act's goal of streamlining the patent process, the USPTO crafted IPR regulations to create a timely, cost-effective alternative to litigation. *Universal Elecs., Inc. v. Universal Remote Control, Inc.*, 943 F. Supp. 2d 1028, 1029 (C.D. Cal. 2013) (quoting 77 Fed. Reg. 48,680 (Aug. 14, 2012)

3

(codified at 37 C.F.R. §§ 42.100 et seq.)). IPR allows a petitioner to challenge the validity of a patent claim after it has issued, but only on grounds of obviousness under 35 U.S.C. § 103, or novelty under § 102, and "only on the basis of prior art consisting of patents or printed publications." 35 U.S.C. § 311(b). IPR is conducted before a panel of three technically-trained Administrative Patent Judges from the Patent Trial and Appeal Board, *id.* § 6, and includes discovery and the right to oral argument, *id.* § 316(a)(5), (8), (10), (13).

An IPR petitioner must wait to file until either nine months after a patent issues or, if post-grant review is instituted, the termination of post-grant review, whichever is later. *Id.* § 311(c). The act imposes additional requirements upon potential petitioners who are also engaged in patent litigation. A party may not file a petition for review of a patent if it has already instituted a civil action challenging that patent. *Id.* § 315(a)(1). If a plaintiff files a civil action challenging a patent after it has petitioned for IPR review of the same patent, the civil case is automatically stayed by statute. *Id.* § 315(a)(2). Further, a prospective petitioner who is served with a complaint alleging infringement of a patent may file an IPR petition no later than one year after service. *Id.* § 315(b). If an IPR results in a written decision, the petitioner is statutorily estopped from asserting in a civil action any ground for invalidity that it raised or reasonably could have raised during the review. *Id.* § 315(e)(2).

The IPR procedure presents a new tactical consideration for parties in a patent infringement action. An IPR petition cannot exceed 60 pages, exclusive of exhibits, 37 C.F.R. § 42.24, and bears a significant cost: $9,000 to file a petition on up to 20 claims with another $200 for each claim in excess of 20, followed by $14,000 if the petition is granted with $400 for each claim in excess of 15, *id.* § 42.15(a). If a defendant wants to file for IPR, it is in its interest to have the claims as limited as possible within a year of litigation commencing so it can use the

4

finite pages of its petition to target the claims that will be dispositive in the civil suit. Conversely, a plaintiff benefits from having as many claims as possible asserted one year into the suit so that the defendant must choose which claims to include in its petition or bear the cost of multiple petitions.[2] If the USPTO finds some or all of the claims invalid, the plaintiff could avoid the resulting statutory estoppel by pursuing other claims still alive in the civil litigation. *See, e.g.*, Orion Armon, *Patent Litigation Strategies at the End of the "Patent Bubble," in* Litigation Strategies for Intellectual Property Cases (Aspatore ed., 2014), 2014 WL 3773052, at *13 ("The strategy of seeking limits on the claims asserted by a patent owner offers the most benefits when an alleged infringer would like to initiate a post-grant proceeding like an inter partes review but faces a large number of patents and asserted claims. Winning an early motion to limit the number of claims asserted in litigation can make filing a petition for inter partes review feasible and help ensure that the patent owner will not be able to retaliate by asserting more claims later in the litigation.").

After considering the purpose and procedure behind IPR, the Court concludes that it is not a proper factor in considering whether to limit the number of claims in federal district court. First, IPR is not inherently tied to infringement litigation. The only procedural prerequisite to filing is that a petitioner wait until nine months after a patent issues or the termination of post-grant review, whichever is later. 35 U.S.C. § 311(c). Though statutes address the relationship between IPR and underlying litigation, *see id.* § 315, there is no requirement of ongoing litigation to enter the process. IPR is not dependent on a district court's pretrial case management in order to be effective; the statutory scheme envisions a petitioner pursuing review based solely

---

[2] This benefit also has costs, as the plaintiff may need to defend any claim, even one that is not central to the dispute between the parties, that is challenged in IPR. Thus, a plaintiff may incur unnecessary expense defending a claim in IPR that it may not ultimately pursue in federal district court.

5

on its own analysis of a patent and the claims it finds objectionable. Indeed, one of its stated purposes is to provide an alternative to patent litigation. *Universal Elecs.*, 943 F. Supp. 2d at 1029 (quoting 77 Fed. Reg. 48,680). An IPR proceeding that invalidates certain patent claims may streamline the issues being litigated in federal district court. Regardless of the salutary effect of this streamlining, it does not follow that a federal court should use its case management authority for the purpose of narrowing claims that may be contested in an entirely separate proceeding. The argument that meaningful IPR is impossible without court-ordered claims reduction ignores the purpose and structure of the procedure.

Second, GE's IPR petition in this case is currently still speculative. In its brief, GE states that it "has not yet decided whether to seek" review and that its decision "will depend on the number of asserted claims that remain in the case, and which UVAPF elects to pursue." GE Br. 12. The majority of cases discussing IPR and district court case management involve motions to stay by parties seeking review or responding to their opponent seeking review. *See generally* Matthew R. Frontz, *Staying Litigation Pending Inter Partes Reivew and the Effects on Patent Litigation*, 24 Fed. Cir. B.J. 469 (2015). In those cases, a primary consideration is whether the USPTO has accepted the petition and instituted review. *See, e.g.*, *id.* at 477 ("The courts will also consider the stage of the inter partes review when making a determination if litigation will be simplified."). *Compare Automatic Mfg. Sys., Inc. v. Primera Tech.*, No. 6:12cv1727, 2013 WL 1969247, at *3 (M.D. Fla. May 13, 2013) (denying stay as premature when the USPTO had yet to rule on the IPR petition), *with Automatic Mfg. Sys., Inc. v. Primera Tech.*, No. 6:12cv1727, 2013 WL 6133763 (M.D. Fla. Nov. 21, 2013) (granting stay once the USPTO had instituted review). While some courts are willing to rule before the USPTO decides on the petition, "other courts—seemingly the majority—deny the motion as premature while permitting defendants to

6

refile for stay if the PTO later accepts review." *CANVS Corp. v. United States*, 118 Fed. Cl. 587, 593 (2014) (collecting cases). These courts' reasoning that case management should not turn on events that remain too speculative applies doubly here, as GE has yet to file, or even commit to filing, its IPR petition.

Finally, the cases GE cites do not compel an alternative finding. In *ACQIS, LLC v. EMC Corp.*, the court concluded that "[i]t was reasonable for EMC to wait for ACQIS to choose which claims it intended to assert in the litigation before pursuing IPRs." No. 14cv13560, 2015 WL 3617106, at *5 (D. Mass. June 10, 2015). Similarly, in *Software Rights Archive, LLC v. Facebook, Inc.*, the court found it was reasonable for Facebook to wait to file its IPR petition until four months after the plaintiff identified the 30 claims (from an initial 140) that it would assert in the lawsuit. No. 12cv3970, 2013 WL 5225522, at *6 (N.D. Cal. Sept. 17, 2013). In both cases, however, claims were narrowed pursuant to the normal progression of the patent suit, not out of consideration for the defendants' IPR filing deadline. In *ACQIS*, the case had progressed past claim construction, and in *Software Rights Archive*, the plaintiff narrowed its claims with its infringement contentions. Both courts addressed the time between claim narrowing and IPR filing while analyzing whether the defendants had been dilatory in bringing their petitions. Neither case presents a district court structuring its scheduling order to aid a party filing for IPR.

For the foregoing reasons, I conclude that GE's potential IPR petition is not a proper factor for determining when UVAPF should limit its asserted claims. I therefore do not consider it for the remainder of the analysis.

B.     *Claim Reduction*

"A district court has inherent authority to reasonably limit . . . the number of patent claims the parties may assert, 'to control the dispositions of the causes on its docket with

7

economy of time and effort for itself, for counsel, and for litigants.'" *Masimo Corp. v. Philips Elecs. N. Am. Corp.*, 918 F. Supp. 2d 277, 282 (D. Del. 2013) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936)); *see also In re Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1303, 1311–13 (Fed. Cir. 2011); *Thought, Inc. v. Oracle Corp.*, No. 12cv05601, 2013 WL 5587559, at *2 (N.D. Cal. Oct. 10, 2013). In determining whether to require parties to limit claims, courts consider the number of claims at issue and the feasibility of trying them to a jury and whether the claims are duplicative or share a common genealogy. *In re Katz*, 639 F.3d at 1311. To comport with due process, courts limiting claims should also provide plaintiffs the opportunity to assert additional claims on a showing that the unselected claim presents a unique issue of liability or damages. *Id.* at 1312–13. Courts must additionally be cognizant that claim limitation can "come too early in the discovery process, denying the plaintiff the opportunity to determine whether particular claims might raise separate issues of infringement or invalidity in light of the defendants' accused products and proposed defenses." *Id.* at 1313 n.9.

UVAPF has so far agreed to drop 12 claims out of its 170 originally asserted. *Id.* at 2 n.1. It is not feasible to try the remaining 158 claims, from two patents, before a jury. *See, e.g.*, *Network Prot. Scis., LLC v. Fortinet, Inc.*, No. 12cv01106, 2013 WL 1949051, *2–3 (N.D. Cal. May 9, 2013) (finding 50 claims unreasonable for discovery and 15 too many for trial); *Thought*, 2013 WL 5587559, at *2 (calling 102 claims "demonstrably unmanageable"). UVAPF acknowledges that it needs to reduce its claims, but argues that the proper time to do so is after the court's claim construction order. UVAPF Br. 11–13. Further, it argues that the actual number of claims for claim construction purposes is 78, as the patents contain two sets of claims, one set of method and one of apparatus, with "essentially identical limitations." *Id.* at 1. UVAPF thus argues that the burden on the Court and parties to litigate through claim construction is less than

8

GE presents in its brief and with its 101 proposed claim terms. The Court agrees that GE has overstated matters for claim construction and will address that later, but the Court also finds 78 claims to be an unmanageable number at this stage in the litigation. *See, e.g.*, *Thought*, 2013 WL 5587559, at *2 (requiring the plaintiff to limit its claims to 32 prior to claim construction).

The '644 and '725 patents share a common genealogy: the '644 patent is a reissue of Patent No. 7,164,268, while the '725 patent is a continuation of the '644 patent and thus also a reissue of the '268 patent. *See* Am. Compl. Ex. A at 1, 12; *id.* Ex. B at 1, 13. Additionally, there is evidence that multiple claims between the two patents contain largely identical language. *See* GE Br. 3. UVAPF's infringement contentions included a table that, for each claim of the '644 patent, lists claims elsewhere in the '644 patent and the '190 application that are "identical or similar."[3] *Id.* Ex. E. GE additionally prepared a table charting largely identical language between twelve claims in the '644 patent and twelve in the '725 patent. *Id.* Ex. F. Such a showing of duplication weighs in favor of limiting claims and shifting the burden to the plaintiff to demonstrate that unselected claims raise unique issues. As the Federal Circuit stated, "When the claimant is in the best position to narrow the dispute, allocating the production burden to the claimant will benefit the decision-making process." *In re Katz*, 639 F.3d at 1311.

The final consideration is whether discovery has sufficiently progressed to provide UVAPF the opportunity to determine which of its claims raise distinct issues of infringement or invalidity. *See id.* at 1313 n.9. Courts have reached a broad spectrum of conclusions concerning the stage of litigation at which it is appropriate to require claim reduction. *See, e.g.*, *Joao Control & Monitoring Sys., LLC v. Ford Motor Co.*, No. 13cv13615, 2014 WL 645246, at *1 (E.D.

---

[3] Of the 12 claims UVAPF agreed to drop, eight are identified in GE's chart as duplicative. *Compare* UVAPF Br. 9, *with* GE Br. Ex. E. GE identifies dozens of additional claims that it contends are identical or similar to others.

9

Mich. Feb. 19, 2014) (limiting the plaintiff to 15 representative claims before infringement contentions had been served); *Thought*, 2013 WL 5587559, at *3 (limiting the plaintiff to 10 claims per patent and 32 total before engaging in claim construction); *Fractus, SA v. Samsung Elecs. Co.*, No. 6:09cv203, slip op. at 3 (E.D. Texas Mar. 8, 2010) (declining to limit 148 asserted claims until after claim construction was complete). A court's objective with this consideration is to avoid unduly prejudicing plaintiffs by forcing them to choose representative claims before they possess the discovery to choose wisely. Applying that principle to this case, the Court finds that the parties' exchange of infringement and invalidity contentions and GE's provision of core technical documents provide the appropriate foundation for an initial claim reduction. *Cf. Tech. Licensing Corp. v. Blackmagic Design Pty Ltd.*, No. 13cv05184, 2015 WL 307256, at *1–4 (N.D. Cal. Jan. 22, 2015) (ordering claim reduction after service of infringement and invalidity contentions, but premising the order on the defendant's provision of final key discovery).

UVAPF served infringement contentions on June 26, 2015, GE served invalidity contentions on August 26, and both parties exchanged proposed terms for construction on September 15. UVAPF began receiving GE's core technical documents with the entry of a protective order on June 18, 2015, ECF No. 63, though UVAPF has also encountered some difficulties with that discovery. As of the filing of its brief, UVAPF was still awaiting operator manuals and related training materials for some of GE's alleged infringing products. UVAPF Br. Ex. G. Additionally, GE objected to the expert UVAPF proposed to use to evaluate GE's source code.[4] Despite these deficiencies, UVAPF has had the majority of relevant discovery for multiple months. This is not a case where "discovery has just begun, and it would be unfair to

---

[4] That matter is also before this Court and will be resolved by a separate order.

require [UVAPF] to choose representative claims." *See Fleming v. Cobra Elecs. Corp.*, No. 1:12cv392, 2013 WL 1760273, at *3 (D. Idaho Apr. 24, 2013) (denying motion to limit claims brought before invalidity contentions had been served). UVAPF has the majority of information it needs to make an intelligent selection of representative terms and could always bring new claims at a later time with a showing of good cause. Furthermore, the two patents at issue share common genealogy and have facially duplicative claims. Claim construction is imminent and, given the unwieldy number of claims that UVAPF has asserted, the time has come for the parties to narrow their dispute for conservation of their own and the Court's resources.

Considering the totality of the case, I find that UVAPF should limit its asserted claims to 25 for the '644 patent and 15 for the '725 patent. I anticipate that the parties will further winnow the number of claims after the claims construction order issues, and perhaps after an IPR proceeding. If they do not, I may order a further claim reduction before trial. In recognition of the lingering issues with core technical discovery, I will allow UVAPF 30 days to select its representative claims. I will also adjust the schedule for claim construction to allow both parties an opportunity to focus their filings on the narrowed list of claims. UVAPF may petition the Court to assert additional claims, which will be allowed upon a showing that the claim raises a unique issue of liability or damages.

The Court notes that GE has proposed an unmanageable number of claim terms for construction. Considering the correlation between the number of claims and claim terms, after UVAPF has narrowed its asserted claims, the Court expects the parties to settle on no more than 10 disputed claim terms for construction.

Finally, the parties raise in passing the number of prior art submissions that GE may make. Neither party develops its argument, and I do not find it appropriate at this point to impose

11

Case 3:14-cv-00051-NKM-JCH   Document 123   Filed 11/10/15   Page 11 of 12   Pageid#: 3000

a limitation. Even so, I note that a similar analysis applies to limiting the number of claims and the number of prior art submissions. The Court encourages the parties to agree to a reasonable number of prior art submissions; otherwise, the Court will impose a limit at the appropriate time.

For the reasons stated above, it is hereby ORDERED:

1. Within thirty (30) days of the entry of this order, UVAPF shall select twenty-five (25) claims from the '644 patent and fifteen (15) claims from the '725 patent to proceed with in this litigation.

2. UVAPF may petition the Court to assert additional claims and will be allowed to do so upon a showing that the new claim presents a unique issue of liability or damages.

3. The parties shall bring no more than ten (10) disputed claim terms for construction before the district court.

It is so ORDERED.

ENTER: November 10, 2015

Joel C. Hoppe
United States Magistrate Judge