# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
## CHARLOTTESVILLE DIVISION

| | |
|---|---|
| UNIVERSITY OF VIRGINIA PATENT FOUNDATION,<br><br>*Plaintiff*,<br><br>v.<br><br>GENERAL ELECTRIC COMPANY,<br><br>*Defendant*. | CASE NO. 3:14–cv–00051<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

This patent case is before the Court on Plaintiff University of Virginia Patent Foundation's ("UVAPF") objections to a non-dispositive ruling by Magistrate Judge Joel C. Hoppe. (Dkt. 152). To simplify greatly, the underlying technology of the case involves magnetic resonance imaging ("MRI") machines, particularly the methods of generating pulses sent by an MRI scanner into the body. The parties entered into an agreed-upon protective order (dkt. 63), which they then came to interpret differently regarding the prosecution bar.[1] The instant objections concern Judge Hoppe's November 20, 2015 ruling granting in part and denying in part Defendant General Electric's ("GE") motion to prevent disclosure of information to UVAPF's expert. (Dkt. 128, *available at* 2015 WL 7431412 (W.D. Va. Nov. 20, 2015)).

Judge Hoppe concluded that UVAPF's expert, Dr. Klaus Hennig, did not present a risk of

---

[1] Generally speaking, a patent prosecution bar is a feature of a protective order which restricts the patent-related activities of an individual who receives confidential information from a party during litigation, or limits the receipt of such information if the individual has already engaged in certain activities. *See generally In re Deutsche Bank Trust Co. Americas*, 605 F.3d 1373, 1377 (Fed. Cir. 2010); *Clayton Corp. v. Momentive Performance, Materials, Inc.*, No. 4:12CV1349 AGF, 2013 WL 2099437, at *1 (E.D. Mo. May 14, 2013).

harm to GE based on his relationship with Siemens (a GE competitor) or his work through a German hospital as a professor, department co-chair, and scientific director. (Dkt. 128 at 5-9). UVAPF does not contest this conclusion. But Judge Hoppe found Dr. Hennig was a "competitive decisionmaker" based on his activity as an independent inventor (*id*. at 9), a ruling with which UVAPF takes umbrage. After finding that Dr. Hennig was a unique expert and balancing the parties' interests, Judge Hoppe determined that—although Dr. Hennig should not be completely forbidden from reviewing confidential GE information—certain safeguards and conditions were warranted. (*Id*. at 10-14). The decision not to completely forbid Dr. Hennig's access to confidential materials was influenced by the existence of the prosecution bar. (*Id*. at 9, 13). However, because the original prosecution bar was circular and vague (as it turned solely on GE's designation of material as "confidential"), Judge Hoppe amended it to cover confidential material "that concerns the subject matter of the patents-in-suit or the proprietary technical aspects of GE's products that allegedly infringe those patents." (*Id*. at 14-18). UVAPF now objects to that amendment as itself vague.

## STANDARD OF REVIEW AND PROCEDURAL HISTORY

UVAPF's objections face an onerous standard of review. "The leading treatise on federal practice and procedure describes altering a magistrate's non-dispositive orders as 'extremely difficult to justify.'" *Carlucci v. Han*, 292 F.R.D. 309, 312 (E.D. Va. 2013) (quoting 12 Wright & Miller, *Federal Practice and Procedure* § 3069 (2d ed. 1997)); *see McDonough v. Aetna Life Ins. Co.*, No. CIV. 3:09CV00071, 2010 WL 1418878, at *8 (W.D. Va. Apr. 8, 2010). Such an order is set aside only when it is "clearly erroneous" or "contrary to law." Fed. R. Civ. P. 72(a). A ruling is "clearly erroneous" only when the totality of the record leaves the Court with the "definite and firm impression" that a mistake has been made. *United States v. U.S. Gypsum Co.*,

333 U.S. 364, 395 (1948); *Harman v. Levin*, 772 F.2d 1150, 1153 (4th Cir. 1985). It is "'contrary to law' when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Bowers v. Univ. of Virginia*, No. 3:06CV00041, 2008 WL 2346033, at *3 (W.D. Va. June 6, 2008). Furthermore, the fashioning of a protective order is committed to the Court's discretion. *Fonner v. Fairfax Cty., Va.*, 415 F.3d 325, 330 (4th Cir. 2005); *M & M Med. Supplies & Serv., Inc. v. Pleasant Valley Hosp., Inc.*, 981 F.2d 160, 163 (4th Cir. 1992). The modification of a protective order—even one agreed upon by the parties—is within the Court's inherent power. *Am. Heartland Port, Inc. v. Am. Port Holdings, Inc.*, 53 F. Supp. 3d 871, 880 (N.D.W. Va. 2014) *aff'd,* No. 14-1801, 2015 WL 8776727 (4th Cir. Dec. 15, 2015); *SmithKline Beecham Corp. v. Synthon Pharm., Ltd.,* 210 F.R.D. 163, 166 (M.D.N.C. 2002).

Moreover, the present issues were exhaustively briefed before Judge Hoppe, who has been actively engaged with this case throughout. Specifically, GE filed a motion to prevent disclosures to UVAPF's proposed expert (dkt. 77), to which UVAPF responded (dkt. 90), and to which in turn GE replied. (Dkt. 93). UVAPF received leave to file a sur-reply. (Dkts. 98 & 99). Judge Hoppe then heard oral arguments for two hours (dkt. 103) and entered an opinion and accompanying order on November 20, 2015 that granted in part and denied in part the motion. (Dkts 128 & 129).

The matter did not end there. UVAPF next sent Judge Hoppe a letter on November 23, 2015 that effectively sought reconsideration of his ruling. (Dkt. 165-2). The next day, Judge Hoppe notified the parties he found no reason to reconsider his decision and urged them to meet and confer. (Dkt. 165-3). On November 27, 2015, UVAPF filed an "emergency motion" to expedite briefing on its forthcoming motion for an exemption from the amended prosecution bar. (Dkt. 133). The motion for expedited briefing was granted. UVAPF then filed its motion for an

– 3 –

exemption (dkt 139), GE responded (dkt. 143), and Judge Hoppe heard another hour and a half of oral presentations. (Dkt. 144). On December 5, 2015, Judge Hoppe denied UVAPF's motion. (Dkt. 148).[2]

## ANALYSIS

The exhaustive proceedings before the Magistrate Judge may alone provide a basis to overrule UVAPF's objections, as generalized objections "that merely reiterate arguments presented to the magistrate judge lack the specificity required under Rule 72, and have the same effect as a failure to object, or as a waiver of such objection." *Moon v. BWX Techs., Inc.*, 742 F. Supp. 2d 827, 829 (W.D. Va. 2010); *see Cook v. Unisys Fed. Gov't Grp.*, No. 7:14CV00579, 2015 WL 5690976, at *1-2 (W.D. Va. Sept. 28, 2015); *Veney v. Astrue*, 539 F. Supp. 2d 841, 845-46 (W.D. Va. 2008). Nevertheless, the Court has reviewed the arguments of the parties and their legal authorities. It finds that UVAPF cannot meet its burden. The Magistrate Judge did not clearly err or act contrary to law, as his rulings are amply supported by the law and the record. Accordingly, UVAPF's objections will be overruled. Although Judge Hoppe's thorough and considered rulings need no further support, the Court adds a few comments on UVAPF's objections for the benefit of the parties.

The lynchpin of UVAPF's objection to the refurbished prosecution bar is Judge Hoppe's comment that "GE's interpretation is an accurate reading of the prosecution bar." (Dkt. 128 at 15). UVAPF relies on that statement throughout its objections. (Dkt. 152 at 1, 9 & n.7, 10, 16; dkt. 168 at 6 n.9). It juxtaposes that passage with GE's prior contention in briefing that the

---

[2] Briefing on UVAPF's objections concluded on January 4, 2016. The Court understands from the Clerk that UVAPF somewhat recently requested oral argument on its objections. The Court finds that the parties' positions are amply and ably presented in their briefs and that oral argument would not aid the decisional process. *See* W.D. Va. L. Civ. R. 11(b); Fed. R. Civ. P. 78(b).

– 4 –

Case 3:14-cv-00051-NKM-JCH   Document 173   Filed 01/29/16   Page 4 of 11   Pageid#: 4250

patent claims here relate "to spin-echo sequences for imaging an object and scanners that implement them." (Dkt. 152 at 9 & n.7, 16). By doing so, UVAPF attributes GE's position to the opinion. It then uses that attribution to characterize the opinion as internally "inconsistent," "vague," and "contradict[ory]," (*id*. at 1, 10, 16), because Judge Hoppe elsewhere remarked that GE's interpretation of the scope of the technology in dispute was "too broad." (Dkt. 128 at 7 n.3).

In actuality, UVAPF manufactures a superficial inconsistency by conflating the original prosecution bar with the amended prosecution bar. UVAPF's argument is without merit once one does not take the statement about GE's interpretation out of context and instead considers the actual analysis of the opinion. Judge Hoppe began his review of the *original* prosecution bar by noting the parties' disparate interpretations of its scope. (Dkt. 128 at 14). GE, he said, believed the scope was tied simply to the materials designed (by GE) as confidential. (*Id*.). And while Judge Hoppe found *that* to be the "accurate" reading of the original prosecution bar, he concluded—in the very next sentence—that GE's interpretation led to an intolerable result, warranting modification of the bar. (*Id*. at 15). Specifically, relying on authorities recognizing that a prosecution bar should not turn "only upon a party's classification of what information it considers confidential" (*id*.), Judge Hoppe then set about narrowing the scope of the bar by linking it with the substance of the case rather than only GE's unilateral designations. (*Id*. at 16-17). Accordingly, no "contradiction" exists because UVAPF incorrectly attributes a view to the opinion that it does not espouse.[3]

---

[3] Put differently, there is nothing inconsistent with concluding (1) GE's interpretation of the *original* prosecution bar was both correct and revealed the need for amendment, and (2) GE's view of the technology in dispute to include "each technological area touched upon by a claim of the patents-in-suit" is "too broad" and thus should not be the guiding principle of the amended prosecution bar. (Dkt. 128 at 7 n.3; *see also* dkt. 148 at 3 n.2).

– 5 –

UVAPF also asserts that the Magistrate Judge's revision to the prosecution bar is vague, unworkable, and "unenforceable" by not defining in greater detail what material is covered. (*E.g.*, dkt. 152 at 16-19). There are several reasons this view fails. First—as *Applied Signal Technology, Inc. v. Emerging Markets Communications, Inc.*, (a case on which UVAPF relies) recognizes—courts commonly define the scope of the prosecution bar as, like here, "relating to the subject matter of the patents-in-suit." No. C-09-02180 SBA DMR, 2011 WL 197811 at *3 n.2 (N.D. Cal. Jan. 20, 2011).[4] Second, UVAPF is wrong that the amended prosecution bar depends on GE's designations. (Dkt. 152 at 18-19). Rather, as explained earlier, the amendment remedied this problem by tying the prosecution bar to materials that are confidential *and* related to the substance of case. Mere designation of materials as "confidential" by GE does not now bring them within the scope of the bar. Third, UVAPF's notion of the prosecution bar is too limited because it would cover only the patented product, rendering the concept of a bar useless. As GE points out, a prosecution bar that encompasses only the same or similar patents is a dead letter, since such patents would not be subject to new patent registration anyway. (Dkt. 165 at 9). Fourth, while UVAPF frequently laments that the amended prosecution bar is not specific enough, Judge Hoppe has provided extensive guidance for the parties even beyond the stated terms of the bar. For example:

- Reviewing confidential materials "related to any [of Dr. Hennig's] active patent applications" would violate the bar. (Dkt. 128 at 13).

---

[4] *E.g.*, *Cheah IP LLC v. Plaxo, Inc.*, No. C-08-4872 PJH (EMC), 2009 WL 1190331, at *3 (N.D. Cal. May 4, 2009) (citing *Cummins-Allison Corp. v. Glory Ltd.*, No. 02 C 7008, 2003 U.S. Dist. LEXIS 23653, at *31-32 (N.D. Ill. Jan. 2, 2004)); *see also Pragmatus AV, LLC v. Facebook, Inc*, No. 511CV2168EJDPSG, 2012 WL 12355858, at *1 (N.D. Cal. July 5, 2012) (concluding that model order using similar language was "sound and appropriately applied," and reflected the "collective wisdom of the court and the bar" even after *In re Deutsche Bank Trust Co. Americas*, 605 F.3d 1373 (Fed. Cir. 2010)).

- "If alongside GE's confidential technologies a document describes a commonplace and widely-known aspect of MRI technology, the bar would only attach to the confidential material." (Dkt. 128 at 16-17 n.7).

- There is "no imminent violation of the prosecution bar from Dr. Hennig reviewing the Confidential Materials directly related to flip-angle refocusing pulse sequence formulas." (Dkt. 128 at 18).

- GE's scope of "spin-echo sequences for imaging an object and scanners that implement them," including "each technological area touched upon by a claim of the patents-in-suit," is "too broad." (Dkt. 128 at 7 n.3).

- Consequently, review of certain source code and design documents regarding "calculation of variable flip-angle refocusing pulses during the spin-echo train" would not preclude Dr. Hennig "from patent prosecution in all MR technology simply because flip-angle refocusing pulses are a part of an MR pulse sequence" in a MRI machine. This same logic and analysis applies to other technologies. (Dkt. 148 at 3 & n.2).

Accordingly, the parties are armed with a sufficient degree of specificity and guidance needed to navigate discovery in this case. Judge Hoppe rightfully narrowed the scope of the prosecution bar when he amended it and, as GE observes, he has provided further "goalposts" against which to measure their compliance going forward.[5]

UVAPF also objects to Judge Hoppe's conclusion that Dr. Hennig is a "competitive decisionmaker" based on his status as an active inventor in the field. UVAPF argues that Dr. Hennig would not be making "business decisions" based on information learned from GE's materials. In its view, because Dr. Hennig's work has a "researching or scientific purpose," he

---

[5] While discouraging the serial lodging of motions and sharing Judge Hoppe's hope that the parties will work together (dkt. 128 at 18), the Court recognizes that there may be future disputes about the prosecution bar. This is not an indictment of the amended prosecution bar. Rather, it is inherent in the nature of litigation and of language generally, which cannot always provide answers in advance with complete certainty for every one of an infinite number of scenarios that may arise. If the parties' collaboration is unsuccessful and Judge Hoppe finds that their reliance on the Court becomes unduly burdensome, or if other meritorious reasons exist for an exception to or further amendment of the prosecution bar, then Judge Hoppe may take such actions as he sees fit. Unless and until that time, the amended prosecution bar is adequate.

does not have a "business purpose" sufficient to make him a competitive decisionmaker. (Dkt. 152 at 11-13).

Given that patent protection essentially provides the patentee with a lawful monopoly, *see AMP Inc. v. Foy*, 540 F.2d 1181, 1183 (4th Cir. 1976); *Pennsylvania Water & Power Co. v. Consol. Gas, Elec. Light & Power Co.*, 184 F.2d 552, 560 (4th Cir. 1950), the Court cannot ignore the economic realities and market incentives that occasion a new invention and its subsequent patent. *See Phoenix Sols. Inc. v. Wells Fargo Bank, N.A.*, 254 F.R.D. 568, 580 (N.D. Cal. 2008) (explaining situation in which patentees "monitor the marketplace"). This is a critical consideration in this case because, as UVAPF agrees, Dr. Hennig is a preeminent talent and inventor in the field. Technological innovation and patents, of course, are big business. The contention that a foremost mind in the fiercely competitive and lucrative field of medical technology does not act as a "competitive decisionmaker" when inventing new technologies and seeking their patent protection is not sustainable. That is precisely why one court has held that:

> [U]nder *Deutsche Bank* [605 F.3d 1373 (Fed. Cir. 2010)], an expert witness who prepares or applies for patents themselves is undoubtedly a competitive decisionmaker. Indeed, the court in *Deutsche Bank* explained that attorneys involved in competitive decisionmaking were those "substantially engaged" in patent prosecution who had "the opportunity to control the content of patent applications," stating that "[s]uch attorneys would not likely be properly exempted from a patent prosecution bar." *Id.* at 1380 (emphasis added). An expert witness who acts as an inventor or technical advisor, as appears to be the case here . . . , certainly controls the content of his or her own patent applications and thus falls squarely into the parameters of competitive decisionmaking as contemplated by the court in *Deutsche Bank.* Allowing experts who prosecute patents themselves to access confidential technical information *without* the protection of a prosecution bar thus poses a tremendous risk of inadvertent disclosure.

*Applied Signal,* 2011 WL 197811, at *5 (emphasis in original).

Far from disregarding *Deutsche Bank*, both *Applied Signal* and Judge Hoppe properly applied its logic to the situation of an inventor-as-expert. If an attorney's ability to: influence a

– 8 –

client's (*i.e.*, inventor's) "product design"; receive "disclosure material for new inventions and inventions under development"; make "strategic decisions" regarding the patent application, and; have an "opportunity to control" the patent application's content all mean he should be subject to a prosecution bar, *Deutsche Bank*, 605 F.3d at 1378-80, then logically the inventor himself should be. *See Tailored Lighting, Inc. v. Osram Sylvania Products, Inc.*, 236 F.R.D. 146, 149 (W.D.N.Y. 2006) ("it seems unreasonable to expect that anyone working to further his own scientific and technological interests would be able assuredly to avoid even the subconscious use of confidential information revealed through discovery that is relevant to those interests"); *TVIIM, LLC v. McAfee, Inc.*, No. 13-CV-04545-VC (KAW), 2014 WL 2768641, at *2 (N.D. Cal. June 18, 2014); *Voice Domain Techs., LLC v. Apple, Inc.*, No. CIV.A. 13-40138-TSH, 2014 WL 5106413, at *4-5 (D. Mass. Oct. 8, 2014).

Finally, UVAPF asserts—as a sort of catch-all repository for its objections—that Judge Hoppe's rulings should be overturned because they will prevent it from proving its case and cause it "to lose its expert." (Dkt. 152 at 2, 7; dkt. 168 at 7). The Court disagrees, and in any event there are ways to avoid UVAPF's feared scenario. Most centrally, UVAPF contends that applying the prosecution bar to Dr. Hennig will cause him to forego his work in this case rather than give up his efforts as an inventor. But this is a feature of a prosecution bar, not—as UVAPF believes—a bug. As GE explains:

> Dr. Hennig may now decide if he wants to proceed in a role as an expert that would require him to review [certain confidential] information. This is purely Dr. Hennig's economic and professional choice whether to serve as an expert [on certain issues] and restrict his inventive activities pursuant to the Court's Protective Order. If Dr. Hennig determines that, because of his ongoing inventive work, he does not want to review the confidential materials . . . then the protective order and prosecution bar worked as [they] should.

– 9 –

(Dkt. 165 at 13-14). Courts recognize that this is the proper incentive structure created by a prosecution bar. *E.g., Applied Signal*, 2011 WL 197811, at *5; *Cummins-Allison Corp. v. Glory Ltd.*, No. 02 C 7008, 2003 WL 26620151, at *9 (N.D. Ill. Dec. 31, 2003).[6]

Of course, Dr. Hennig may prefer to continue innovating rather than serve as an expert in this case (or at least as an expert on matters to which the prosecution bar would apply). If so, one option is to provide a stronger economic incentive to serve as an expert and to forego inventive work during the period of the prosecution bar.[7] *See Perfect 10, Inc. v. Giganews, Inc.*, No. CV 11-07098-AB (SHX), 2014 WL 10894452, at *4 (C.D. Cal. Oct. 31, 2014) (reviewing accepted practice of compensating expert witnesses so long as "the expert's incentive structure [does not] cross[] the threshold from an indirect incentive" based on non-contingent payment to a contingency fee based on case outcome or specific testimony). Someone of Dr. Hennig's knowledge and expertise is expected both to be active in the (literal) marketplace of ideas and to attempt to recapture some fruits of his labor through the patent system. Concomitantly, UVAPF may need to compensate him for both his present expertise and his opportunity cost of eschewing possible future benefits.

---

[6]  UVAPF protests that these cases do not account for a situation where the expert is unique. But the upshot of UVAPF's view is that once an expert is found to be unique, then a prosecution bar in that case could not apply to him. This result proves too much, especially when, as here, the expert in question is an active inventor in the field and will be given access to a competitor's highly confidential material. Granting someone in Dr. Hennig's situation access to confidential information without consequence would essentially endorse the (subconscious and unintentional) appropriation of such information. As explained *supra*, the Court believes that the course pursued by Judge Hoppe adequately balances both GE's legitimate need to protect its confidential material and UVAPF's need for a qualified expert. And as explained *infra*, UVAPF's "Scylla or Charybdis choice" (dkt. 152 at 6 & n.5) is a false one because there are ways to avoid the result it fears.

[7]  UVAPF does not presently seek a reduction in the length of the prosecution bar.

Alternatively, as Judge Hoppe observed, UVAPF may retain additional experts to analyze confidential materials that touch on areas where, for example, Dr. Hennig's has active patent applications. (Dkt. 128 at 18). Lastly, the Court agrees that the scope of the bar reflects the indisputable "breadth of UVAPF's allegations" and "accused instrumentalities," (dkt. 128 at 16, 18-19), an ironic result because UVAPF simultaneously has claimed that the scope of the technology and inventions at issue are "narrow." (Dkt. 152 at 7, 9).

## CONCLUSION

For the foregoing reasons, UVAPF's objections to Judge Hoppe's November 20, 2015 opinion and order will be **OVERRULED**. An appropriate order will issue. The Clerk of the Court is hereby directed to send a certified copy of this opinion to all counsel of record.

Entered this 29th day of January, 2016.

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE