CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
05/06/2019
JULIA C. DUDLEY, CLERK
BY: H. Wheeler
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | |
|---|---|
| UNIVERSITY OF VIRGINIA ) | |
| PATENT FOUNDATION, ) | Civil Action No. 3:14cv00051 |
|     Plaintiff, ) | |
| v. ) | MEMORANDUM OPINION |
| ) | |
| GENERAL ELECTRIC COMPANY ) | By:   Joel C. Hoppe |
| d/b/a GE HEALTHCARE, ) |         United States Magistrate Judge |
|     Defendant. ) | |

This matter is before the Court on Plaintiff University of Virginia Patent Foundation's ("UVAPF") Sealed Motion to Lift the Stay and to Assert Claims from U.S. Patent No. RE44,644. ECF No. 200. The parties have thoroughly briefed the issues, ECF Nos. 200, 202, 203, 207, and the Court heard oral argument on March 29, 2019, ECF No. 212. Based on the parties' written submissions and oral arguments and the relevant law, I conclude that UVAPF has not shown good cause to be permitted to assert new claims in this action.

I. Procedural History

This case concerns two patents related to magnetic resonance ("MR") imaging. In its Amended Complaint, UVAPF alleged that Defendant General Electric Company ("GE"), a manufacturer of MR technologies, infringed upon Patent Nos. RE44,644 ("the '644 patent") and RE45,725 ("the '725 patent"), both titled "Method and apparatus for spin-echo-train MR imaging using prescribed signal evolutions."[1] Am. Compl. ¶¶ 7, 18, ECF No. 117. The primary issue before the Court is whether UVAPF may assert two claims from the '644 patent that it had not previously asserted in this litigation. An examination of the case's procedural history informs the Court's resolution of this issue.

---

[1] The '644 and '725 patents were both reissues of U.S. Patent No. 7,164,268 ("the '268 patent").

1

UVAPF filed its Complaint on December 8, 2014. ECF No. 1. In March 2015, the parties submitted to the Court their Joint Report under Rule 26(f) of the Federal Rules of Civil Procedure. ECF No. 42. Pursuant to their report, the parties agreed that UVAPF's Disclosure of Asserted Claims and Infringement Contentions, as well as its accompanying document production, would comply with Rule 3-1(a)-(h) and Rule 3-2 of the Patent Local Rules for the United States District Court for the Northern District of California (the "N.D. Cal. Loc. Pat. Rules"). Likewise, Defendant's Invalidity Contentions and accompanying document production would comply with Rules 3-3(a)–(d) of the N.D. Cal. Loc. Pat. Rules. The parties disagreed, however, as to whether "upper limits should be placed on the number of claims asserted by Plaintiff . . . at various milestones in the case." Joint Report ¶ 6.

On June 26, 2015, UVAPF served on GE its Disclosure of Asserted Claims and Infringement Contentions ("Initial Claim Disclosure"), asserting 170 claims from the '644 Patent and the '725 Patent. Def.'s Br. in Supp. of Limiting No. of Asserted Claims, Ex. D, ECF No. 110-5.[2] Approximately two months later, GE served its Preliminary Invalidity Contentions, comprising over 3,000 pages of arguments and claim charts. *See id.*, Decl. of Jonathan Detrixhe ¶ 8, ECF No. 110-1. GE thereafter moved to limit the number of claims UVAPF could assert in this case. ECF No. 110. In November 2015, this Court extended the deadline for the parties to exchange preliminary term construction and extrinsic evidence and suspended all remaining deadlines in the scheduling order pending the resolution of GE's motion. ECF No. 121.[3] The Court later suspended the preliminary term construction and extrinsic evidence deadline because

---

[2] In its opposition brief to GE's motion, UVAPF noted that the actual total number of claims, when reduced for duplicative method and apparatus claims, was 78. Pl.'s Br. in Opp'n to Reduction of Asserted Claims 9, ECF No 111.

[3] This Order was also based, in part, on GE's pending motion to prevent the disclosure of certain confidential material of UVAPF's proposed expert, Dr. Jürgen Hennig. *See* ECF Nos. 77, 121.

of a pending summary judgment motion filed by GE, as well as the likelihood that GE would soon petition for Inter Partes Review ("IPR"), pursuant to 35 U.S.C. § 312. *See* Order of Nov. 24, 2015, ECF No. 132.

On November 10, 2015, this Court entered an Order limiting the number of claims that UVAPF may assert to twenty-five claims from the '644 patent and fifteen claims from the '725 Patent. Mem. Op. & Order of Nov. 10, 2015, ECF No. 123. It further ordered that UVAPF could "petition the Court to assert additional claims" and that it would be permitted to do so "upon a showing that the new claim presents a unique issue of liability or damages." *Id*. at 11. In a subsequent order, the Court allowed UVAPF to assert identical method and apparatus claims as a pair. Order of Nov. 24, 2015, at 2. UVAPF reduced its claims in accordance with the Court's orders, asserting twenty-five pairs of method and apparatus claims on patent '644 and fifteen claims on patent '725 (the "Amended Claim Disclosure"). Pl.'s Br. in Supp. of Mot. to Lift Stay & Assert Claims, Ex. A to Decl. of Ari B. Rafilson, ECF No. 200-4.

In December 2015, GE filed a Notice advising the Court that it had filed IPR petitions challenging the claims that UVAPF had identified in its Initial Claim Disclosure under the '644 Patent. *See* ECF No. 164. In June 2016, the Patent Trial and Appeal Board ("PTAB") of the United States Patent and Trademark Office accepted GE's petitions. Notice of USPTO Inst. of IPR Ex. 1, ECF No. 180-1. In July, Senior District Judge Normal K. Moon stayed this matter pending resolution of GE's IPRs. Order of July 5, 2016, ECF No. 182. Judge Moon's Order further required the parties to notify the Court within seven days of the conclusion of the IPRs. In October 2016, GE filed an additional IPR petition challenging UVAPF's claims under the '725 patent that UVAPF had asserted in this litigation. *See* ECF No. 183. In June 2017, the PTAB issued a final written decision in the '644 Patent IPRs finding all challenged claims were invalid.

*Id*. The PTAB issued a second decision in April 2018 also finding invalid the challenged claims under the '725 Patent. *See* ECF No. 192. UVAPF appealed the '725 Patent IPR decision and portions of the '644 Patent IPR decisions to the United States Court of Appeals for the Federal Circuit. *See* ECF No. 201. In December 2018, the Court of Appeals affirmed the PTAB's decisions with regard to the '644 Patent claims and subsequently denied UVAPF's petition for a panel rehearing. UVAPF thereafter voluntarily dismissed its appeal of the '725 IPR decision. *Id*.

In February 2019, UVAPF filed the present motion seeking to lift the stay issued by Judge Moon and to permit it to disclose previously unasserted claims. Specifically, UVAPF seeks to assert claims 51 and 58 under the '644 Patent. Pl.'s Mot. to Lift Stay & Assert Claims 1, ECF No. 200. UVAPF did not include these claims in its Initial Claim Disclosure, nor were they submitted to GE as part of the Amended Claim Disclosure following the Court's Order that UVAPF reduce its total claims. Nevertheless, UVAPF contends that these new claims should be allowed pursuant to the Court's Order that it could petition the Court to assert additional claims upon a showing that the new claim "presents a unique issue of liability or damages." *Id.* at 5 (citing ECF No. 123).

II. Discussion

UVAPF asserts that claims 51 and 58 present "unique issues of liability" because they do not contain "echo-time ratio," "flip-angle ratio," or "single-amplitude ratio" limitations, each of which were a part of the IPR challenges to the '644 Patent and '725 Patent. Pl.'s Br. in Supp. of Mot. to Lift Stay & Assert Claims 1. It also argues that claims 51 and 58 are unique in that they include a limitation requiring T1 and T2 relaxation times to be "selected" when flip angles for MR pulse sequences are calculated, a limitation that was not contained in previously asserted claims. *Id.* GE argues that, regardless of whether claims 51 and 58 are unique from those

4

previously asserted, UVAPF has failed to show good cause for seeking to assert new claims that were omitted from its previous claim disclosures. Def.'s Br. in Opp'n to Mot. to Lift Stay & Assert Claims, ECF No. 202. Assuming, without deciding, that the new claims alleged are distinctive from those set forth in the Initial Claim Disclosure and Amended Claim Disclosure, I agree that UVAPF must demonstrate good cause for its failure to assert these claims previously. Because UVAPF has failed to do so, I will deny its motion to assert these additional claims at this stage of the litigation.

   i.  Whether "Good Cause" is required for Plaintiff to assert additional claims

The Court first addresses the appropriate standard for deciding whether UVAPF may assert additional claims. GE argues that the Plaintiff must show "good cause" to add claims 51 and 58 at this stage of the proceeding. UVAPF relies principally on language from this Court's prior Order instructing that UVAPF could "petition the Court to assert additional claims and will be allowed to do so upon a showing that the new claim[s] present[] a unique issue of liability or damages." Mem. Op. & Order of Nov. 10, 2015, at 12. GE argues that UVAPF's present motion to assert new claims does not account for its delay in asserting the new claims and is "cloak[ed] . . . as a response to the Court's order limiting the asserted claims." Def.'s Br. in Opp'n to Mot. to Lift Stay & Assert Claims 1. I agree. Even when presented with an opportunity to assert an unrestricted number of claims in their Initial Claim Disclosure, UVAPF did not contend that GE infringed claims 51 and 58. Nevertheless, on the heels of a series of adverse findings by the PTAB that are likely to have a dispositive impact on UVAPF's infringement allegations, UVAPF now argues that these new claims present sufficiently unique issues that they must be added to their Amended Claim Disclosure.

The November 2015 Memorandum Opinion was expressly aimed at addressing the 158 claims that remained after UVAPF had already voluntarily omitted some claims of the '664 and '725 Patents. *See* Mem. Op. & Order of Nov. 10, 2015, at 8. The Opinion and Order did not contemplate that UVAPF would seek to expand these claims, but rather assumed that UVAPF intended to further narrow these claims as litigation progressed. *See id.* ("UVAPF acknowledges that it needs to reduce its claims, but argues that the proper time to do so is after the court's claim construction order."). The Order did say that UVAPF could petition the Court to add additional claims—beyond those selected in its Amended Claim Disclosure—upon a showing that those claims presented "a unique issue of liability or damages." *Id.* This language, however, was not meant to suggest that such a showing was the only prerequisite for asserting additional claims.[4] Indeed, my opinion also noted that UVAPF "could always bring new claims at a later time with a showing of good cause," Mem. Op. & Order of Nov. 10, 2015, at 11, but the issue now raised by UVAPF simply was not before the Court in determining whether to limit the claims UVAPF was asserting at the time.

I find that showing "good cause" for bringing new claims—particularly claims that were not asserted in the Initial Claim Disclosure—is a prerequisite for Plaintiff to amend its Amended Claim Disclosure. First, the "good cause" requirement is supported by local rules. Though the

---

[4] The "unique issue of liability or damages" language was drawn from *In re Katz*, in which the Federal Circuit found that providing the plaintiff an opportunity to add additional claims to an initial claim disclosure was necessary to protect the plaintiff's due process rights after the plaintiff was required to reduce the number of its claims in the early stages of litigation. *See* 639 F.3d 1303, 1309, 1311–13 (Fed. Cir. 2011). Despite the parties' dispute over whether *In re Katz* involved the addition of *new* claims not asserted in the plaintiff's initial claim assertion, *see* Def.'s Br. in Opp'n to Mot. to Lift Stay & Assert Claims 6; Pl.'s Reply Br. in Supp. of Mot. to Lift Stay & Assert Claims 1, the *Katz* decision did not address the question of what specific showing a plaintiff must make to raise additional claims not previously asserted in its initial claim disclosure. Indeed, the Federal Circuit noted that the plaintiff in that case had "not file[d] a motion to add claims with the requisite showing of need." *Id.* at 1312. Thus, the only question squarely before the court was whether the district court could require a plaintiff to reduce its total number of asserted claims in the first place.

Western District of Virginia does not have local patent rules to govern pre-trial procedures unique to patent infringement suits, I find that rules from other jurisdictions provide helpful guidance. In their Rule 26(f) report, the parties agreed to be bound by Rule 3-1 of the N.D. Cal. Loc. Pat. Rules as it concerns the Plaintiff's Disclosure of Asserted Claims and Infringement Contentions. This rule states that UVAPF was to provide in its Initial Claim Disclosure, "[e]ach claim of each patent in suit that is allegedly infringed by each opposing party." N.D. Cal. Loc. Pat. R. 3-1(a); *see* Joint Report ¶ 4. Moreover, Rule 3-6 provides, in pertinent part, that amendments to initial claim disclosures "may only be made by order of the Court upon a timely showing of good cause." That rule provides a list of non-exhaustive examples of good cause, including "[a] claim construction by the Court different from that proposed by the party seeking amendment" or "[r]ecent discovery of nonpublic information about the Accused Instrumentality which was not discovered, despite diligent efforts, before the services of the Infringement Contentions." N.D. Cal. Loc. Pat. R. 3-6(a), (c). Many other jurisdictions' local patent rules contain nearly identical language concerning the amendment of claim disclosures. *See, e.g.*, D. Utah Loc. Pat. R. 3.4 ("A party may amend its Final Infringement Contentions . . . only by order of the court upon a showing of good cause and absence of unfair prejudice to opposing parties. . ."); E.D. Tex. Lo. Pat. R. 3-6 ("Amendment or supplementation of any Infringement Contentions . . . other than as expressly permitted in [Rule] 3-6(a), may be made only by order of the Court, which shall be entered only upon a showing of good cause."); N.D. Ohio Loc. Pat. R. 3.10 ("[A]fter submission of exchange of claim terms . . . additional claims in the patent(s) in suit may not be asserted without obtaining leave from the Court for good cause shown.").

Though the parties here did not expressly agree to be bound by Rule 3-6 of the N.D. Cal. Loc. Pat. Rules, I find the "good cause" requirement of this rule—and other similar local rules—

to be instructive, particularly in light of the parties' agreement to comply with the N.D. Cal. Loc. Pat. Rules concerning pretrial claim disclosures. *Volumetrics Med. Imaging, L.L.C. v. Toshiba Am. Med. Sys.*, No. 1:05cv955, 2011 U.S. Dist. LEXIS 67532, at *49 (M.D.N.C. June 9, 2011) (finding that the parties were bound by the "good cause" requirement under the N.D. Cal. Loc. Pat. Rules despite agreeing in their joint report to be bound only by Rule 3-1 because "all of the rules in Section 3 of the Northern District of California Patent Local Rules . . . form an inter-related regimen regulating a plaintiff's assertion of infringement allegations"); *see also O2 Micro Int'l, Ltd. v. Monolithic Power Sys.*, 467 F.3d 1355, 1366 (Fed. Cir. 2006) ("If the parties were not required to amend their contentions promptly after discovering new information, the contentions requirement [in Rule 3-1 of the N.D. Cal. Loc. Pat. Rules] would be virtually meaningless as a mechanism for shaping the conduct of discovery and trial preparation.").

Second, the Federal Rules of Civil Procedure also support the conclusion that Plaintiff is required to show "good cause" to add additional claims. Rule 16(b) states, "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4); *cf. EMED Techs. Corp. v. EMED Techs. Corp.*, No. 2:15cv1167, 2018 U.S. Dist. LEXIS 207019, at *3 n.2 (E.D. Tex. Nov. 16, 2018) (comparing a "good cause" requirement in local patent rules to Fed. R. Civ. P. 16(b)(4)). Judge Moon entered a Pretrial Order on January 21, 2015, ECF No. 12, and the Order was amended on February 26, 2015, to set June 26, 2015, as the deadline for "Plaintiff's Disclosure of Asserted Claims and Infringement Contentions and Accompanying Document Production," ECF No. 38. The amended Pretrial Order also set a deadline of August 25, 2015, for GE's Invalidity Contentions and Accompanying Document Production. Both parties met these deadlines. UVAPF's request to assert new claims effectively requires amendment of these deadlines. To allow UVAPF to amend these deadlines without requiring

8

some showing of good cause would condone the "shifting sands approach to claim construction," in which UVAPF could extend litigation indefinitely by modifying its claims each time GE presents an effective defense. *See O2 Micro*, 467 F.3d at 1364. A central purpose of requiring the "parties to crystallize their theories of the case early in litigation" is to "allow the defendant to pin down the plaintiff's theory of liability and to allow the plaintiff to pin down the defendant's theories, thus confining discovery and trial preparation to information that is pertinent to the theories of the case." *Id*. at 1365.[5] Thus, UVAPF will need to show good cause for failing to introduce claims 51 and 58 in its Initial Claim Disclosure or Amended Claims Disclosure.

      ii.      Whether UVAPF has Shown "Good Cause" to Amend its Claim Disclosure

To establish "good cause" for amending its claim disclosure, UVAPF must show that it acted with diligence in pursuing its previously unasserted claims. *See O2 Micro*, 467 F.3d at 1365; *cf. RFT Mgmt. Co. LLC v. Powell*, 607 F. App'x. 238, 242 (4th Cir. 2015) ("Rule 16(b)'s good cause standard emphasizes the diligence of the party seeking amendment.") (quoting *O'Connell v. Hyatt Hotels of P.R.*, 357 F.3d 152, 155 (1st Cir. 2004))). Generally speaking, this requires a showing of "diligence in discovering the basis for amendment" and "diligence in seeking amendment once the basis for amendment has been discovered." *Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*, 236 F. Supp. 3d 1110, 1113 (N.D. Cal. 2017). The underlying question, however, is "whether [UVAPF] could have discovered the new information earlier had it acted with the requisite diligence." *Id*. I find that UVAPF has failed to show that it acted diligently.

---

[5] Permitting plaintiffs to amend their claim disclosure as a matter of course after adverse IPR findings would also run contrary to Congress's purpose in creating IPR "as part of a more efficient and streamlined patent system that will improve patent quality and limit unnecessary and counterproductive litigation costs." *Microsoft Corp. v. Proxyconn, Inc.*, 789 F.3d 1292, 1308 (Fed. Cir. 2015) (internal quotation marks omitted), *overruled on other grounds by Aqua Prods., Inc. v. Matal*, 872 F.3d 1290 (Fed. Cir. 2017). Indeed, plaintiffs might drastically prolong litigation simply by adding new claims in their civil actions in any instance where they received an unfavorable ruling in IPR.

9

First, UVAPF argues that it was delayed in acquiring information necessary to establish infringement of claims 51 and 58 because of a dispute over one of its expert's access to GE's technical information. In July 2015, UVAPF disclosed to GE its intent to use Jürgen Hennig, Ph.D., as a consultant and proposed expert in this action. *See* Def.'s Mot. to Prevent Disclosure, Ex. A, ECF No. 77-3. Later that month, GE moved to prevent Dr. Hennig from gaining access to its confidential materials. *See* Def.'s Mot. to Prevent Disclosure, ECF No. 77. The Court denied GE's motion in November as it concerned Dr. Hennig's access to GE's technical material, *see* Order of Nov. 20, 2015, ECF No. 129, and a few days later the Court indefinitely suspended the parties' preliminary claim term constructions and extrinsic evidence deadlines, Order of Nov. 24, 2015. UVAPF argues that GE had represented that its software did not select T1 and T2 relaxation times for calculating MR pulse sequence flip angles and that it was not able to verify that GE was, in fact, infringing on claims 51 and 58 until after an expert had reviewed GE's materials. Thus, UVAPF argues, GE's motion to prevent Dr. Hennig from gaining access to that material, juxtaposed with the subsequent suspension of claim construction deadlines, delayed UVAPF's ability to assert claims 51 and 58.

Even if those events caused some delay, I fail to see why UVAPF was unable to acquire the information necessary to learn of GE's alleged infringement of claims 51 and 58 following the Court's November 2015 order permitting Dr. Hennig to access GE's technical materials. Although the Court suspended the claim construction and extrinsic evidence deadlines later that month, this case remained active and pending on the Court's docket for approximately seven more months before Judge Moon entered an order staying the case. UVAPF has not presented any reason why Dr. Hennig could not have reviewed GE's materials and reached a conclusion as to whether GE's software selected T1 and T2 relaxation times as of November 2015.

UVAPF also argues that the adverse IPR finding warrants an amendment to add claims that were not invalidated in that proceeding. UVAPF points to two decisions where courts permitted amendment of claim disclosures following an adverse IPR finding. The courts in both of those cases relied primarily on the effect of the IPR proceeding on the plaintiffs' ability to move forward with their patent infringement cases. *EMED Techs. Corp.*, 2018 U.S. Dist. LEXIS 207019, at *5 (finding that the proposed amendments were "important" because "without the amendment, [p]laintiff's case would be dismissed and [the] [p]laintiff would lose any potential damages from alleged past infringement"); *Corel Software v. Microsoft Corp.*, No. 2:15cv528, 2018 U.S. Dist. LEXIS 189832, at *7–8 (D. Utah Nov. 5, 2018) (finding that an adverse IPR decision was the type of "litigation development" that justified amendment of claims under the local patent rules). In my November 2015 Order, I found that the existence of an IPR procedure was "not a proper factor in considering whether to limit the number of claims [UVAPF could bring] in federal district court." Mem. Op. & Order of Nov. 10, 2015, at 5. This finding was reached, in part, because "IPR is not inherently tied to infringement litigation." *Id*. Based on this reasoning, I decline to find now that an IPR proceeding forms a basis for UVAPF to add claims not previously asserted.

Moreover, the court in *Corel Software* reached its finding, in part, by analogizing an unfavorable IPR finding to an "adverse claim construction," the latter of which could be good cause to amend claims. I find this analogy inapposite to the facts of the present case. *See* 2018 U.S. Dist. LEXIS 189832, at *8. Whereas unanticipated claim construction findings generally constitute good cause to amend because they convey new information about the asserted claims that the plaintiff could not have previously discovered, s*ee* N.D. Cal. Loc. Pat. R. 3-6 (identifying an example of good cause to amend as "[a] claim construction by the Court different

11

from that proposed by the party seeking amendment"); *see also Corel Software*, 2018 U.S. Dist. LEXIS 189832, at *8 ("Local Patent Rules specifically authorize amendment in response to an adverse claim construction by the court."), UVAPF does not assert that the IPR proceedings here conveyed any new information about claims 51 and 58. Accordingly, the results of the IPR proceedings in this case are not analogous to an adverse claims construction ruling. Thus, I decline to find that the adverse finding in the IPR proceedings here support UVAPF's request to add new claims.

Ultimately, UVAPF fails to adequately explain why it could not have learned, prior to the IPR proceeding, that GE's technology selected T1 and T2 relaxation times for calculating MR pulse sequence flip angles. Other than noting that the 170 claims set forth in its Initial Claim Disclosure were invalid, UVAPF has not identified any new information that it uncovered during the IPR proceedings that supports its request to add new claims. As of November 2015, when UVAPF's expert was authorized to begin exploring GE's technical data, UVAPF should have been able to uncover information that it now asserts shows that GE was infringing upon claims 51 and 58. It could have sought to add the new claims during the ensuing seven months before the Court stayed this action in July 2016. Its unexplained failure to do so shows a lack of diligence in discovering the basis for the new claims and in requesting to assert the new claims.

Finally, UVAPF argues that it was diligent in seeking to amend its claim disclosure because it submitted the new claims ahead of the claim construction hearing. The claim construction hearing (also known as a *Markman* hearing) is a key milestone after which parties should further narrow their claims. *Realtime Data, LLC v. MetroPCS Tex., LLC*, No. 6:10cv493, 2012 U.S. Dist. LEXIS 189652, at *13–14 (E.D. Tex. Apr. 19, 2012) (finding that the defendants would be uniquely prejudiced by amended claims issued after the *Markman* hearing); *see also*

*Medtronic Sofamor Danek USA, Inc. v. Nuvasive, Inc.*, No. 08cv1512, 2010 U.S. Dist. LEXIS 147262, at *24 (S.D. Cal. June 25, 2010) ("[O]utside of the claim construction hearing context, a court will only permit amendment upon a demonstration of good cause."); *Google, Inc. v. Netlist, Inc.*, No. C 08-4144, 2010 U.S. Dist. LEXIS 144392, at *9 (N.D. Cal. May 3, 2010) ("Permitting Netlist to amend its infringement contentions at this juncture would necessitate reopening discovery and potentially require additional claims construction proceedings."). Plaintiffs do not, however, have free reign to amend their claims, as a matter of course, prior to claims construction, *see O2 Micro*, 467 F.3d at 1363 (noting, under the N.D. Cal. Loc. Pat. Rules, that while a party may amend claims that have been adversely affected by a claim construction hearing without leave of court within a certain period after the claim construction hearing, it must nonetheless seek leave of court and show good cause to amend prior to the claim construction hearing). Considering the unexplained delay in asserting the new claims, the timing of UVAPF's request—coming before claim construction—does not undo the lack of diligence shown by the seven-month delay. Thus, I cannot find that UVAPF has acted with the requisite diligence to establish good cause to amend merely by having sought amendment ahead of claim construction. Moreover, the stage of the case in which a party requests to add claims speaks more to potential prejudice than to diligence.

Because UVAPF has failed to demonstrate that it acted diligently it cannot meet the good cause standard, and the Court need not decide whether GE would suffer prejudice if the new claims were allowed. *See O2 Micro*, 467 F.3d at 1368 ("Having concluded that the district court could properly conclude that [the plaintiff] did not act diligently in moving to amend its infringement contentions, we see no need to consider the question of prejudice to [the defendant].").

IV. Conclusion

For the foregoing reasons, I find that UVAPF has not shown good cause to assert new claims. Accordingly, UVAPF's Motion to Lift Stay and Assert Claims, ECF No. 200, will be DENIED by separate order entered this date. The stay, however, will be lifted.

It is so ORDERED.

ENTER: May 6, 2019

Joel C. Hoppe
United States Magistrate Judge